ANTONIO PIZZA *vs.* JAMES F. O'MALLEY.

DECEMBER 1, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This is an action of trespass on the case for negligence. The action was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiff for $400. The defendant then filed a motion for a new trial, which was denied. The case is before this court on the defendant's exceptions to the denial by the trial justice of his motions for a directed verdict and for a new trial, all other exceptions being expressly waived.

The accident happened on Branch avenue, in the city of Providence, at or about 6:30 p. m., on the evening of November 27, 1935. The highway at the place of the accident, according to the plaintiff, is thirty to forty feet from curb to curb. The northerly sidewalk of this street at that place adjoins the property of the North Burial Ground and is separated therefrom for some distance by a heavy mesh-wire fence. There is also a pole carrying service wires close to the curbing of that sidewalk with an iron arm attached

to it, which, extending some three feet out towards the highway, supports an arc light fixture in the shape of an iron torch. The arc of this fixture is enclosed in a large glass globe on the upper portion of the torch, some eighteen feet from the ground and weighing about seven and one-half pounds.

Both the defendant and the plaintiff were proceeding in a westerly direction on Branch avenue, the former driving his automobile on that highway and the latter walking on its northerly sidewalk. The testimony shows that the defendant's automobile mounted the sidewalk where the plaintiff was walking, hit the pole with the electric light fixture, just missed striking the plaintiff, continued on the sidewalk for some distance, and came to a stop against the fence of the burial ground. The force of the blow by the automobile against the pole caused a short circuit in the electric system and shattered the glass globe enclosing the arc light. A piece of falling glass from the broken globe struck the plaintiff on the head and, cutting through his hat, inflicted a wound over an inch long and half an inch deep.

A police officer, who came upon the scene after the accident, testified that on the way to the police station the defendant told him that an automobile going in an easterly direction, that is, coming towards him, had forced him to turn to his right "up on the curb." This witness further testified that the defendant did not then claim that the accident was caused by any sudden defect in the steering apparatus of the automobile.

The defendant's version of the accident at the trial in the superior court, other than that he was driving between seventeen to twenty miles an hour, substantially appears in the following question and answer. Q. "Tell the jury if you will how this accident happened?" A. "Well, as near as I can get it, see, I was going along there and I saw an-

other car coming down, and I think there was another one over on the other side. The light interfered a little with me. I went to pull over. They were crowding me, and I pulled over, and it looks as if something give in the car, see, like the steering rod. And I went into the fence. I mean into the post (electric light pole), and up on the sidewalk. And I hit the post fairly well, but the fence, no damage to the fence."

An automobile mechanic, who examined the defendant's automobile shortly after it had been towed away to a garage, was produced as a witness by the defendant, apparently for the purpose of proving that something had suddenly gone wrong with the steering apparatus of the automobile immediately before the accident. On being asked why, from his observation of the automobile, the "steering gear was out of commission", he replied as follows: "Well the work we found on this car, we couldn't say if it was caused previous to the accident or after the accident, but we did have to take the steering post off."

It appears from the evidence that the defendant relies upon a double defense in meeting the plaintiff's case: one, that without warning or fault on his part the steering apparatus of his automobile suddenly went wrong; and two, that he was forced by an emergency to swerve from his course on the highway and drive on to the sidewalk. The state of the evidence before us presents questions of fact which are reasonably open to different conclusions on each of these issues. Under these circumstances, it would have been error for the trial justice to direct a verdict for the defendant. *Gallo* v. *Simpson Spring Co.* 55 R. I. 410.

The jury and the trial justice had the advantage over us of having heard and seen the witnesses, and they both decided in favor of the plaintiff. The credibility of the witnesses was a material element to be considered in determining the weight of the evidence in reference to the defend-

ant's liability and the plaintiff's injury. Whether the accident was caused solely by a defect in the steering apparatus of the automobile, which the defendant could not have previously discovered by the exercise of reasonable care, or whether it was the result of an unexpected emergency to which he did not contribute by his own negligent conduct, or whether in such an emergency he exercised the care that a reasonably prudent person would have exercised under similar circumstances, were all questions to be fairly submitted to the jury in the first instance and later reviewed by the trial justice on a motion for a new trial. See *Henderson* v. *Dimond*, 43 R. I. 60; *Kosrofian* v. *Donnelly*, 117 A. (R. I.) 421. We find nothing in the record before us that warrants our disturbing the verdict as rendered by the jury and approved by the trial justice.

The defendant's exceptions are overruled and the case is remitted to the superior court with direction to enter judgment on the verdict.

*Leo M. Goldberg, Philip B. Goldberg,* for plaintiff.
*Daniel A. Colton,* for defendant.